UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| HARTCO FLOORING CO., a division of | ) | | |
| ARMSTRONG WOOD PRODUCTS, INC., | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:04-CV-327 |
| | ) | | (VARLAN/GUYTON) |
| UNITED STEELWORKERS OF AMERICA, | ) | | |
| Local 14597, and UNITED STEELWORKERS | ) | | |
| OF AMERICA, an international labor union, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM OPINION

This civil action is before the Court on cross motions for summary judgment. In Plaintiff's Motion for Summary Judgment [Doc. 15], plaintiff seeks an order vacating the Arbitration Award that is the subject of this case on the grounds that there are no disputed issues of material fact and plaintiff is entitled to judgment as a matter of law. On the other hand, in its Motion for Summary Judgment [Doc. 18], defendant seeks enforcement of the Arbitration Award on grounds that there are no disputed issues of material fact and defendant is entitled to judgment as a matter of law.

I.  **Summary Judgment Standard**

Under Rule 56(c), summary judgment is proper if the record, taken as a whole, shows that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden of establishing there is no genuine issue of material fact lies upon the moving party. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 330 n.2 (1986). The Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *See id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *See id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *See id.* at 250.

In the instant case, the parties agree that there is no dispute as to material facts. [*See* Docs. 15, 18]. The parties also agree that the only question remaining in dispute is a legal one – whether the arbitrator exceeded the scope of the parties' collective bargaining agreement in settling the grievance at issue in this case. If he did so, plaintiff is entitled to judgment as a matter of law vacating the arbitration award because the arbitrator exceeded his authority. *See Bruce Hardwood Floors v. S. Council of Indus. Workers*, 8 F.3d 1104 (6th

2

Case 3:04-cv-00327   Document 25   Filed 09/21/05   Page 2 of 13   PageID #: 185

Cir. 1993). If he did not, defendant is entitled to judgment as a matter of law enforcing the award because the arbitrator's award is entitled to deference. *See Appalachian Reg'l Healthcare, Inc. v. United Steelworkers of Am.*, 245 F.3d 601, 607-08 (6th Cir. 2001).

## II.    Relevant Facts

### A.    The Collective Bargaining Agreement, Work Rules and Safety Rules

On May 25, 2000, plaintiff and defendant entered into a collective bargaining agreement, entitled "Labor Agreement Between Hartco Flooring Company and Local #14597, USWA, AFL-CIO" ("Agreement") [*see* Doc. 1-2]. The Agreement contains fourteen articles, addressing a range of workplace issues, including employee discipline and safety, at plaintiff's Oneida, Tennessee, facilities. Article 2 of the Agreement, entitled "Management Rights," includes a provision granting management the right "to promote and demote employees, and to discipline or discharge employees for just cause." [*Id*. at 4]. Article 2 also contains a section entitled, "Safety and Work Rules," which grants management the "unlimited right to promulgate, revise or modify plant safety and work rules governing order and discipline at its operations." [*Id*.].

In Article 9, entitled "Discipline," the parties agreed that all grievances would be handled in accordance with a procedure set out in Article 10, "Adjustment of Grievances." [*Id*. at 14]. That article establishes a grievance committee, describes the procedure for filing a grievance, and provides for arbitration in the event a grievance is not resolved through the grievance procedure. [*See id*. at 15-16]. In allowing for arbitration as a dispute resolution

3

mechanism, the parties agreed that "[t]he arbitrator shall have no power to add to or subtract from or modify any of the terms or conditions of this Agreement." [*Id*. at 16].

In a separate document, entitled "Hartco Flooring Company Oneida, TN Work Rules/Disciplinary Action" ("Work Rules") [Doc. 1-5], plaintiff, pursuant to its right to promulgate work rules under Article 2 of the Agreement, states, "The following work rules are vital in maintaining not only an efficient operation, but a safe work environment. Violations of these rules **shall** result in immediate **discharge** without prior warning . . . ." [*Id*. at 1 (emphasis in original)]. The second work rule listed states, "Employees shall follow all safety rules and instructions at all times." [*Id*.].

In a third document, entitled "Hartco Flooring Company Oneida, TN Safety & Environmental Manual Subject: Forklift Operations" ("Safety Rules"), plaintiff, pursuant to its right to promulgate safety rules under Article 2 of the Agreement, describes proper procedures for safely operating forklift trucks.[1] [*See* Doc. 19-2 at 2]. The Safety Rules instructs, "All employees shall abide by the following rules to ensure they operate their

---

[1] Plaintiff argues that the Safety Rules are irrelevant because the document was not listed among the documents relied upon by the arbitrator, indicating he did not rely on it. [*See* Doc. 23 at 4]. The Court is bound by the facts included within the arbitrator's award. *See United Paperworks Intern. Union, AFL-CIO v. Misco*, 484 U.S. 29, 38 (1989). The Arbitration Award at issue in this case does mention the Safety Rules in a section of the Award entitled "The Testimony," but it does not separately list it in a section entitled "Relevant Portions of the Agreement and Related Company Documents." [*See* Doc. 1-6]. The Court is satisfied that the arbitrator relied on the testimonial record, where the Safety Rules document was mentioned, and that the failure to list the Safety Rules in the appropriate section was a simple oversight. Therefore, because the Safety Rules were included as part of the testimonial record at the arbitration, they are properly before the Court now.

4

forklift in a safe manner." [*Id*. at 2]. The Safety Rules further lists, "Violations of the following partial list of forklift safety rules to help you understand the type of rules for which violations could be ruled serious and result in immediate discharge . . . ," followed by fifteen items. [*See id.* at 4]. Among the listed items are "[d]riving a forklift too fast or in a reckless manner," and "[f]ailure to immediately report any accident to your supervisor." [*Id*. at 5].

    B.    The Grievance

On September 23, 2002, John Blevins, an employee of plaintiff and member of defendant, was operating a forklift to move pallets of billets at plaintiff's Oneida facility. As Mr. Blevins was moving the pallets from one work area to another, he was required to drive the forklift past a foam machine where Gary Reagan, another employee of plaintiff, was working. In order for Mr. Reagan to work at the end of the foam machine, he would move a pallet out into the area where Mr. Blevins was operating the forklift. The pallet caused an obstruction that Mr. Blevins was required to move when he attempted to pass the foam machine in the forklift. At some point, Mr. Blevins, rather than exiting the forklift to remove the obstruction by hand, chose to attempt to move the pallet by shifting the forks on the forklift. When he did so, the pallet came into contact with Mr. Reagan, causing him to almost fall to the floor.

This incident was not immediately reported to a supervisor. The following day, on September 24, 2002, a supervisor was alerted, an investigation was conducted, and Mr. Blevins was suspended from work. On October 3, 2002, plaintiff discharged Mr. Blevins "for violating safety rules by performing an unsafe act." [Doc. 1-3 at 5]. In response,

5

defendant timely filed a grievance on behalf of Mr. Blevins in accordance with the grievance procedure established by the Agreement. Unable to reach a resolution, the parties turned to the arbitration process provided for in the Agreement.

The parties selected Dr. Stephen D. Owens, Associate Professor of Management and International Business at Western Carolina University, who is listed on the roster of the Federal Mediation and Conciliation Service. The parties stipulated that the issue to be addressed in the arbitration was "whether the Grievant was terminated for just cause. If not, what should the remedy be?" [*Id.* at 5]. On July 17, 2003, Dr. Owens heard testimony from five witnesses. Following the hearing, the parties submitted briefs to Dr. Owens. On June 13, 2004, after having developed a record and considered the parties' arguments, Dr. Owens issued an Arbitration Award in favor of Mr. Blevins on the grounds that plaintiff lacked just cause for the discharge. [*See* Doc. 1-6].

C.  Arbitration Award

In analyzing whether there was just cause, Dr. Owens stated, "an essential element of just cause requires the discipline imposed must be proportionate to the proven infraction." [*Id.* at 9]. Although "the Grievant did commit a safety violation for which discipline is warranted," in this case a discharge was "a penalty that clearly exceeds the limits of reasonableness." [*Id.* at 8-9]. Thus, Dr. Owens concluded that plaintiff lacked just cause to discharge Mr. Blevins. [*Id.* at 9-10]. Therefore, Dr. Owens sustained defendant's grievance.

He reasoned that the discharge was not "proportionate to the proven infraction" because of four factors. [*See id.* at 9]. First, Mr. Blevins had committed only one previous

6

safety-related offense, 19 months earlier, which resulted in a counseling session instead of a discharge. Second, Mr. Blevins had been absent only on ten occasions during his 23 years of service to plaintiff. Third, Mr. Blevins had been the subject of pranks and other inappropriate workplace conduct by some of those also involved in this incident. Finally, plaintiff did not discipline Mr. Reagan for his failure to report immediately the incident, conduct for which plaintiff had discharged Mr. Blevins. Thus, although Mr. Blevins had violated a safety rule, "there is evidence to indicate that the discipline is 'markedly too harsh (and thus) an abuse of managerial discretion.'" [*Id*. at 9 (quoting *Discipline and Discharge in Arbitration* 86 (N. Brand, ed. BNA Books 1998))].

As a result, Dr. Owens reinstated Mr. Blevins to his prior position with backpay, awarded credit towards Mr. Blevins's seniority, and expunged documents relating to the discharge from his record. [*See id.* at 10]. Recognizing that Mr. Blevins had committed a safety violation, however, Dr. Owens noted that plaintiff "had just cause to discipline" Mr. Blevins and suspended him for 30 days. [*Id*. at 8, 10]. Plaintiff, pursuant to 29 U.S.C. § 185, filed a complaint in this Court seeking an order vacating the Award. Defendant answered, after which both parties filed the motions for summary judgment that are presently before the Court.

## III. Analysis

Ordinarily, an arbitration award is afforded great deference. *See United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navig. Co.*, 363 U.S. 574 (1960); *United Steelworkers of Am. v. American*

*Mfg. Co.*, 363 U.S. 564 (1960). "A court's review of an arbitration award 'is one of the narrowest standards of judicial review in all of American jurisprudence.'" *Way Bakery v. Truck Drivers Local 164*, 363 F.3d 590, 593 (6th Cir. 2004) (quoting *Tenn. Valley Auth. v. Tenn. Valley Trades & Labor Council*, 184 F.3d 510, 515 (6th Cir. 1999) (per curium)). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworks Intern. Union, AFL-CIO v. Misco*, 484 U.S. 29, 38 (1989). *See also Appalachian Reg'l Healthcare, Inc.*, 245 F.3d at 607-08.

An arbitrator's award is valid and enforceable "so long as it draws its essence from the collective bargaining agreement." *Enterprise Wheel & Car Corp.*, 363 U.S. at 597. Thus, an arbitration award must be enforced if the court concludes that it can be "rationally derived from the terms of the agreement." *Mercy Mem'l Hosp. v. Hosp. Employees' Division of Local 79*, 23 F.3d 1080, 1083 (6th Cir. 1994). *See also Nat'l Post Office v. U.S. Postal Service*, 751 F.2d 834, 840 (6th Cir. 1985). In *Nat'l Post Office*, Justice Stewart, sitting by designation, wrote, "an arbitrator's decision is entitled to great deference and generally should be upheld absent irrationality or disregard of plain and unambiguous language in the agreement." 751 F.2d at 840. An arbitration award departs from the "essence of the agreement" and should not be upheld *only* where:

> (1) an award conflicts with the express terms of the collective bargaining agreement, (2) an award imposes additional requirements that are not expressly provided in the agreement, (3) an award is without rational support or cannot be rationally derived from the terms of the agreement, and (4) an award is based on the general

8

considerations of fairness and equity instead of the precise terms of the agreement.

*Bruce Hardwood Floors*, 8 F.3d at 1107 (citing *Dobbs, Inc. v. Local 614, Int'l Bhd. of Teamsters*, 813 F.2d 85, 86 (6th Cir. 1987)). *See also Cement Div., Nat'l Gypsum Co. v. United Steelworkers of Am.*, 793 F.2d 759, 766 (6th Cir. 1986) (citations omitted).

In the instant case, plaintiff alleges the Award departs from the essence of the agreement in the manner described in *Bruce Hardwood Floors*. More specifically, plaintiff argues that Dr. Owens found that Mr. Blevins had violated provisions of the bargained-for Work Rules, but refused to enforce the bargained-for penalty of discharge described in those same Work Rules. On the other hand, defendant argues that the parties' Agreement authorizes discharge where there is just cause, a term not specifically defined in the Agreement, and that Dr. Owens applied a reasonable definition of that term in finding just cause was lacking. Therefore, this Court must determine whether Dr. Owens departed from the essence of an unambiguous agreement, as plaintiff insists, or merely construed an ambiguous term, as defendant insists.

In assessing whether to give deference to an arbitrator's interpretation of an ambiguous term, a court must determine whether "the language of the contract at hand is sufficiently clear *so as to deny* the arbitrator the authority to interpret the agreement as he did." *Eberhard Foods, Inc. v. Handy*, 868 F.2d 890, 893 (6th Cir.1989) (emphasis added). Thus, a court may not overrule an arbitrator's interpretation of an ambiguous term where: (a) the term is ambiguous; (b) the arbitrator had authority to interpret the term; and (c) the

9

interpretation is rational. *See Appalachian Reg'l Healthcare, Inc.*, 245 F.3d at 607-08; *Mercy Mem'l Hosp.*, 23 F.3d at 1083; *Eberhard Foods, Inc.*, 868 F.2d at 893; *Nat'l Post Office*, 751 F.2d at 840. Applying these rules to the instant case, the Court finds that the Award is entitled to deference.

The Court finds that the term "just cause" as used by the parties in the Agreement is ambiguous – susceptible to multiple definitions. The Agreement does not define the term "just cause" or the specific infractions satisfying that standard, it merely grants plaintiff authority to "discipline or discharge employees for just cause." [*See* Doc. 1-2 at 4]. Plaintiff, however, argues that the extrinsic Work Rules give precise definition to "just cause" by providing a specific punishment (discharge) for a specific infraction (violation of a safety rule). This argument, rather than being rooted in the precise language of the Agreement, is itself an interpretation of the undefined term, because there is nothing in the Agreement or in the Work Rules to connect the definition of the term "just cause" to the discipline described in the Work Rules. [*See* Docs. 1-2, 1-5]. Furthermore, a reading of the Safety Rules, which states that an employee *could* be discharged for violating a safety rule, [*see* Doc. 19-2], seems to undercut the definiteness of the Work Rules, which state an employee *shall* be discharged for violating a safety rule. Therefore, the language of the Agreement was not so clear as to deny Dr. Owens the authority to interpret the meaning of "just cause." *See Eberhard Foods, Inc.*, 868 F.2d at 893.

The Court also finds that the Agreement did not restrict the arbitrator's authority to interpret the term "just cause;" it merely withheld any "power to add to or subtract from or

10

modify any of the terms or conditions of this Agreement." [Doc. 1-2 at 16]. The parties explicitly granted Dr. Owens the authority to interpret the meaning of "just cause" when they presented the issue for resolution as "whether [plaintiff had] sufficient (just) cause to terminate John Blevins." [Doc. 1-6]. Therefore, Dr. Owens was acting within the scope of his authority when he gave definition to "just cause." *See Appalachian Reg'l Healthcare, Inc.*, 245 F.3d at 607-08.

Finally, in interpreting the term "just cause," Dr. Owens stated that a fundamental principle of just cause is a proportional relationship between the infraction and the level of discipline. [*See* Doc. 1-6 at 8 (citing *Discipline and Discharge in Arbitration* 86 (N. Brand, ed. BNA Books 1998))]. Dr. Owens concluded that although the Work Rules might seem to mandate an immediate discharge, that level of discipline still must be proportionate to the infraction in order to satisfy the bargained-for just cause standard in the Agreement. In urging this Court to conclude that Dr. Owens departed from the essence of the Agreement, plaintiff seems to suggest that proportionality is not an element of just cause as the term is used in the parties' Agreement.

Plaintiff would read the Agreement as *mandating* a discharge once it has been determined that there was a safety infraction. [*See* Doc. 20 at 4]. This interpretation is contradicted by plaintiff's own conduct, however. As Dr. Owens noted, plaintiff did not discharge Mr. Blevins for an earlier safety infraction. Dr. Owens also noted that plaintiff did not discharge Mr. Reagan for his safety violation (failure to immediately report an accident to a supervisor), which occurred during the incident giving rise to this case. In addition,

plaintiff's interpretation is strained when considered in light of the more equivocal language in the Safety Rules. Thus, it appears Dr. Owens's interpretation of "just cause" reflected the parties' own understandings of the term, as demonstrated by their conduct.

Furthermore, in construing just cause to include a concept of proportionality, Dr. Owens explicitly relied on "the record, pertinent cases, and the relevant literature." [Doc. 1-6 at 8]. In stating, "A fundamental principle in the determination of just cause is that the level of discipline be reasonably related to the proven infraction," Dr. Owens relied upon *Discipline and Discharge in Arbitration*, a familiar publication in the field. Dr. Owens noted that the arbitrator's authority to construe just cause as requiring proportionality was a "still-accepted view" that dated back some fifty-eight years. [*Id*. at 9]. In making that statement, Dr. Owens relied upon *The Seven Tests of Just Cause*, another familiar publication in the field. [*See id*. at 9].

In short, Dr. Owens clearly demonstrated that his reading of the term "just cause" was not a departure from the "still-accepted view" in the field or the practices of the parties. Because Dr. Owens's reasoning and conclusion were based on the record and supported by authorities in the field, this Court finds that Dr. Owens's construction of the term "just cause," and the consequent conclusions he reached are rational. *See Mercy Mem'l Hosp.*, 23 F.3d at 1083.

## IV. Conclusion

This Court must give deference to his conclusion that the discipline was too severe in light of the infraction and, therefore, must enforce the Arbitration Award. *See Enterprise Wheel & Car Corp.*, 363 U.S. 593; *Warrior & Gulf Navig. Co.*, 363 U.S. 574; *American Mfg. Co.*, 363 U.S. 564. Dr. Owens was acting within the scope of his authority in interpreting an ambiguous term in the parties' Agreement, and his interpretation was rational. Accordingly, plaintiff's motion for summary judgment [Doc. 15] will be **DENIED** and defendant's motion for summary judgment [Doc. 18] will be **GRANTED**. The Arbitration Award shall be enforced.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE